Thomas C. Horne
Attorney General
Firm No. 1400

Robert L. Ellman, Bar No. 014410
Solicitor General
David D. Weinzweig, Bar No. 018687
Senior Litigation Counsel
1275 West Washington Street
Phoenix, Arizona 85007-2926
Telephone: (602) 542-8986
Fax:  (602) 542-8308
Robert.Ellman@azag.gov
David.Weinzweig@azag.gov

Attorneys for Defendants

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| National Association for the Advancement of Colored People, Maricopa County Branch, National Asian Pacific American Women's Forum,<br><br>Plaintiffs,<br>v.<br><br>Tom Horne, Attorney General of Arizona, in his official capacity; Arizona Medical Board; and Lisa Wynn, Executive Director of Arizona Medical Board, in her official capacity,<br><br>Defendants. | NO. CV-13-01079-PHX-DGC<br><br>**DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(1) AND 12(b)(6)** |

**PRELIMINARY STATEMENT**

This case turns on fundamental Article III standing principles, which Plaintiffs hope to expand on an unprecedented scale.  Plaintiffs, the National Association for the Advancement of Colored People and National Asian Pacific American Women's Forum, assert an equal protection challenge on behalf of their female members against an Arizona statute that compels identical treatment of all females and excludes all pregnant females from civil or criminal liability.  Their sole alleged harm is an uncognizable stigmatic injury.

Plaintiffs lack standing to raise their equal protection claim for three independent and equally dispositive reasons:

- **Stigma does not meet Article III injury requirement**. Plaintiffs' sole alleged injury is stigma, which is insufficient to convey constitutional standing.
- **No genuine threat of prosecution**. Plaintiffs do not intend to engage in conduct prohibited under the challenged statutes. Nor could they. Even if Plaintiffs or their members intended to obtain a race or sex-based abortion, the statutes expressly exclude pregnant females from liability.
- **No standing to assert generalized grievance**. Plaintiffs seek no more than to vindicate their own value preference through federal courts, which is not permitted. An intense dissatisfaction with government cannot substitute for actual injury under Article III.

Defendants thus move the Court to dismiss the Complaint with prejudice for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), Fed. R. Civ. P.

Plaintiffs also fail to allege the prima facie elements of an equal protection claim—namely, Plaintiffs never identify a discrimination of substance against their members; nor do Plaintiffs point to a similarly situated group that has received superior treatment. Defendants thus move the Court, in the alternative, to dismiss the Complaint for failure to state a claim under Rule 12(b)(6), Fed. R. Civ. P.

## BACKGROUND

This lawsuit concerns A.R.S. § 13-3603.02 and § 36-2157 (collectively, the "Selective Abortion Laws"), which became effective on July 20, 2011. (Compl. ¶ 13, ECF No. 1).

**THE RELEVANT STATUTES**. Plaintiffs assert an equal protection challenge against the Selective Abortion Laws, which prohibit abortion providers from offering abortion as an instrument of selection for parents who want children of a particular gender or race; and forbid the coercion of sex and race-based abortions via threats or actual force. A.R.S. § 13-3603.02 (A). The Laws provide for criminal (class three felony) and civil (compensatory damages) enforcement remedies. A.R.S. § 13-3603.02 (A), (C). Various health care providers are required to "report known violations" to law enforcement under threat of civil fines. A.R.S. § 13-3603.02 (D). Abortion providers

2

are also required to aver their compliance with the Law on a patient-by-patient basis. A.R.S. § 36-2157.

Of particular import here, all pregnant women are expressly excluded from the Selective Abortion Laws and cannot be held civilly or criminally liable:

> (E) A woman on whom a sex-selection or race-selection abortion is performed is not subject to criminal prosecution or civil liability for any violation of this section or for a conspiracy to violate this section.

A.R.S. § 13-3603.02 (E).

Of equal importance, the Laws prohibit performing sex and race-based abortions on all women—regardless of race or ethnicity. A.R.S. § 13-3603.02.

**THIS LAWSUIT**. Plaintiffs filed this lawsuit on May 29, 2013. Plaintiffs only assert an **equal protection** claim against the Selective Abortion Laws "on behalf of [their] members." (Compl. ¶¶ 3, 6, 58-63). Plaintiffs do not allege a **due process** violation; nor do Plaintiffs assert that the Laws place an undue burden on the rights of their members to obtain abortion services.

Turning to the allegations, Plaintiffs deride the Selective Abortion Laws as "an attack on the dignity of the Black and Asian or Pacific Islander ('API') women of Arizona" and then characterize the Laws as premised on the "belief[] that Black and API women are deliberately using abortion to destroy their own communities." (Compl. at p. 1).

Plaintiffs further criticize the Selective Abortion Laws as nothing but a solution in search of a problem. Plaintiffs allege that:

> No evidence was presented to the legislature in support of this Act of any woman of any race, including an API woman, having a sex-selection abortion in Arizona in order to prevent the birth of a female (or male) baby.

> No evidence was presented to the legislature in support of this Act about any woman, including an API woman, who had allegedly engaged in or supported sex-selection abortions in another country and were now living in or planning to reside in Arizona.

3

> [A]t no time during the legislative debate was any testimony or evidence introduced attempting to link the rate or number of abortions among white women, or women of any race except Black women, to so-called race-selection abortions.
>
> No evidence was introduced in the legislature in support of this Act that identified any woman in Arizona who had an abortion with the intent to reduce the number of Blacks in Arizona or in the population generally.

(Compl. ¶¶ 32, 39, 48, 49). Plaintiffs allege the data actually established that Arizona had no problem with race and sex-selection abortions. (Compl. ¶¶ 50, 51).

As for injuries resulting from the Selective Abortion Laws, Plaintiffs variously allege the Laws "stigmatize[]" (Compl. ¶¶ 3, 6, 52, 55, 56, 57, 59, and p. 1), "demean[]" (Compl. ¶¶ 3, 6, 55, 56, 57, 63, and p. 1), "discriminate[] against" (Compl. ¶¶ 3, 6, 55, 56, 57, 63, and p. 1), and "humiliate[]" (Compl. ¶ 63) their "members" and "Black and API women."

## ARGUMENT

### A. Plaintiffs Lack Standing To Pursue An Equal Protection Challenge And The Complaint Should Be Dismissed Under Rule 12(b)(1), Fed. R. Civ. P.

The Constitution provides a discrete and finite role for federal courts in our democracy, which is to hear and decide actual "cases" and "controversies." U.S. Const. art. III, §2. This express limitation prevents federal courts from morphing into local debate halls—where interest groups and concerned bystanders can turn to assert and press alternative value preferences. *Sierra Club v. Morton*, 405 U.S. 727, 735 (1972) (found that group lacked standing at pleading stage where it failed to allege requisite injury).

At the heart of this constitutional limitation is the requirement that all litigants have standing to gain admission into federal courts. *Allen v. Wright*, 468 U.S. 737, 750 (1984) (affirming dismissal under Rule 12(b) based on lack of standing). To have standing, Plaintiffs must—at a minimum—have suffered an injury that (i) is personal, distinct, palpable, actual, concrete, and imminent, not conjectural, speculative or hypothetical; (ii) was caused by the conduct complained of; and (iii) is likely to be

4

redressed by a favorable decision. *Id.*; *Sacks v. Office of Foreign Assets Control*, 466 F.3d 764, 771 (9th Cir. 2006) (affirming Rule 12(b) dismissal for lack of standing because plaintiff failed to allege a concrete and imminent threat of enforcement). In addition, where an organization or association brings suit on behalf of its members, the organization or association must demonstrate that: (i) its members would otherwise have standing to sue in their own right; (ii) the interests it seeks to protect are germane to the organization's purpose; and (iii) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977). Standing is a threshold consideration. *Sacks*, 466 F.3d at 771 ("It is well established that, as a threshold matter, this court must determine whether the plaintiffs have standing to assert their claim.").

On a motion to dismiss for lack of constitutional standing (like here), the Court must conduct a "careful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted." *Allen*, 468 U.S. at 752. To survive this motion, Plaintiffs must allege facts in their Complaint that, if proven, would confer standing upon them. *Sacks*, 466 F.3d at 771 (upon a motion to dismiss, "[the plaintiff] must allege facts in his Amended Complaint that, if proven, would confer standing upon him."). If such facts are not alleged, the complaint must be dismissed for lack of subject matter jurisdiction. *Id.*; *Schmier v. U.S. Ct. of Appeals for the Ninth Cir.*, 279 F.3d 817, 820 (9th Cir. 2002) (string citation of U.S. Supreme Court cases for proposition that "injury element most assuredly remains the proper basis of a [Rule 12(b) motion to dismiss]").

**1.     Plaintiffs' alleged stigma injury is insufficient to convey standing**

When the underbrush is cleared away, Plaintiffs rest their standing hopes on one alleged injury—that the Selective Abortion Laws stigmatize their pregnant female members. Although variously couched as demeaning, humiliating and disparaging, Plaintiffs allege that the Laws have injured their pregnant female members by making them feel like second-class citizens. (Compl. ¶¶ 3, 6, 52, 55, 56, 57, 63, and p. 1).

5

But, even if proven, this alleged injury is insufficient alone to convey Article III standing. The U.S. Supreme Court has rebuffed stigmatic injuries as too abstract and generalized to meet standing requirements in equal protection litigation. *E.g.*, *Allen*, 468 U.S. at 755-756; *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 485-86 (1982) (rejecting stigmatic injury as basis for standing).

The seminal and controlling opinion here is *Allen v. Wright*, 468 U.S. at 737 (1984). Like Plaintiffs here, the *Allen* plaintiffs asserted an equal protection challenge premised on "a claim of stigmatic injury, or denigration, suffered by all members of a racial group when the Government discriminates on the basis of race." *Id*. at 755. And like Defendants here, the *Allen* defendants filed a motion to dismiss the complaint for lack of standing, which the district court granted. *Id*. at 748. The Supreme Court affirmed the dismissal on standing grounds because stigma was not a judicially cognizable injury:

> [Plaintiffs have no] standing to litigate their claims based on the stigmatizing injury often caused by racial discrimination. There can be no doubt that this sort of noneconomic injury is one of the most serious consequences of discriminatory government action and is sufficient in some circumstances to support standing. Our cases make clear, however, that such injury accords a basis for standing only to 'those persons who are personally denied equal treatment' by the challenged discriminatory conduct.

*Id*. at 755.

In so holding, the Court lamented the fate of federal courts if such abstract mental injuries were sufficient for standing. "Recognition of standing in such circumstances would transform the federal courts into no more than a vehicle for the vindication of the value interests of concerned bystanders. Constitutional limits on the role of the federal courts preclude such a transformation." *Id*. at 756 (omitting internal citation and quotation marks).

Plaintiffs here "are in exactly the same position" as the plaintiffs in *Allen* because "they do not allege a stigmatic injury suffered as a direct result of having personally

6

been denied equal treatment." *Id*. Plaintiffs allege no facts showing the Selective Abortion Laws will produce an imminent and "distinct or palpable" injury personal to their members. Plaintiffs never allege that their members have been personally denied any benefit or privilege due to the Selective Abortion Laws. Plaintiffs never point to a pregnant member who wants an abortion in order to handpick the sex or racial composition of her child but has been unable to obtain such an abortion due to her race and the Selective Abortion Laws. For that matter, Plaintiffs never point to a pregnant member who wants an abortion for any reason, but has been denied one due to her race and the Selective Abortion Laws.

At bottom, Plaintiffs' stigma and denigration theories are no different than the generalized and abstract injuries held insufficient for constitutional standing by the Supreme Court in *Allen*. If Plaintiffs have standing here, then virtually any litigant could challenge any government action he or she views as unduly favorable to another by simply alleging what cannot be disproved—namely, that he or she suffers denigration, stigma, or like form of discomfiture due to the challenged action. Standing would then require little, if anything, above the mere motivation to file suit. Federal courts do not have the constitutional authority to adjudicate metaphysical injuries. And allegations of "psychological" discomfiture at government action are insufficient to demonstrate standing—even if "phrased in constitutional terms." *Valley Forge*, 454 U.S. at 485-86.

### 2. Plaintiffs allege no genuine threat of prosecution under the Selective Abortion Laws

The Ninth Circuit has long held that "neither the mere existence of a proscriptive statute nor a generalized threat of prosecution satisfies the 'case or controversy' requirement." *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000) (en banc). Rather, to challenge the Selective Abortion Laws as unconstitutional, Plaintiffs must point to at least one member who faces a "genuine threat of prosecution" from the Laws. *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979) ("A plaintiff who challenges a statute must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or

7

enforcement."). A genuine threat of prosecution requires, in turn, a "concrete plan to violate the law in question." *McCormack v. Hiedeman*, 694 F.3d 1004, 1021 (9th Cir. 2012).

Plaintiffs do not and cannot allege a genuine threat of prosecution here. First, the Selective Abortion Laws expressly exclude pregnant women from liability. A.R.S. § 13-3603.02 (E) (excluding "women on whom a sex-selection or race-selection abortion is performed" from criminal or civil liability). This is fatal alone. Plaintiffs have no standing under Article III to challenge a statute on behalf of their female members that does not even apply to those members. *Warth v. Seldin*, 422 U.S. 490, 503 (1975) (holding that petitioners lacked standing because "none is himself subject to the ordinance's strictures"); *Lopez v. Candaele*, 630 F.3d 775, 788 (9th Cir. 2010) ("Finally, we have indicated that plaintiffs' claims of future harm lack credibility when the challenged speech restriction by its terms is not applicable to the plaintiffs.").

The Ninth Circuit recently applied this well-established principle to reach a predictable disposition in *McCormack v. Hiedeman*, 694 F.3d 1004 (9th Cir. 2012). *McCormack* involved a female plaintiff who challenged the constitutionality of three criminal abortion statutes in Idaho after terminating her own pregnancy. *Id*. at 1009. Of the statutes, two applied to pregnant females and one expressly excluded pregnant females. Asked to weigh standing, the Ninth Circuit held the plaintiff could not challenge the statute that did not apply to pregnant females:

> McCormack does not have a "concrete plan" to violate [the statute]. [The statute] explicitly excludes women from criminal liability. Idaho Code § 18–507("No penalty shall be assessed against the woman upon whom the abortion is performed or attempted to be performed."). Therefore, there is no "concrete" way for McCormack to violate the law as an individual pregnant woman because [the statute] specifically excludes women from criminal liability.

*Id.* at 1021.

Second, Plaintiffs do not allege their members even want race and sex-selective abortions. Stated differently, neither Plaintiffs nor their members intend to engage in the

8

prohibited conduct. This defeats standing, too. *United Farm Workers*, 442 U.S. at 298 (standing requires a credible threat of prosecution under the challenged provision); *Akron Center for Reproductive Health, Inc. v. City of Akron*, 651 F.2d 1198, 1210–1211 (6th Cir. 1981) (held, physician did not meet injury requirement for standing to challenge an abortion restriction when he "had never even expressed a desire to perform" the restricted procedure).

### 3. Plaintiffs acquire no standing based on their generalized grievance with government conduct

This lawsuit merely represents Plaintiffs' generalized grievance with government conduct, which is insufficient to establish constitutional standing. *Valley Forge*, 454 U.S. at 475. It is not enough that litigants may be intensely interested or experienced in the problem—federal courts are not authorized to review legislative decisions "at the behest of organizations or individuals who seek to do no more than vindicate their own value preferences through the judicial process." *Sierra Club*, 405 U.S. at 740. The Supreme Court has never equated mere dissatisfaction over government conduct with the injury required to sustain Article III jurisdiction:

> Although respondents claim that the Constitution has been violated, they claim nothing else. They fail to identify any personal injury suffered by them as a consequence of the alleged constitutional error, other than the psychological consequence presumably produced by observation of conduct with which one disagrees. That is not an injury sufficient to confer standing under Art. III, even though the disagreement is phrased in constitutional terms. It is evident that respondents are firmly committed to the constitutional principle of separation of church and State, but standing is not measured by the intensity of the litigant's interest or the fervor of his advocacy.

*Valley Forge*, 454 U.S. at 485-86.

*Sierra Club* is particularly instructive as it also deals with standing at the pleading stage. 405 U.S. at 731. *Sierra Club* involved members of a conservation group that sued to prevent the government from commercializing an "area of great natural beauty." 405 U.S. at 728, 734, 738. The Court held that the members lacked standing because they failed to show any personal injury from the prospective government action; namely, that

9

the commercialization of the land at issue would somehow harm the members. "Nowhere in the pleadings or affidavits did the [Sierra] Club state that its members use [this particular land] for any purpose, much less that they use it in any way that would be significantly affected by the proposed actions of the respondents." *Id*. And, a "mere interest in a problem, no matter how longstanding the interest and no matter how qualified the organization is in evaluating the problem, is not sufficient" under Article III for standing. *Id*. at 739 (internal citation and quotation marks omitted).

Plaintiffs' lawsuit here has all the shortcomings of *Sierra Club*—and more. Like the plaintiffs in *Sierra Club*, Plaintiffs allege nothing but an "interest in the problem," which is not enough for standing. Plaintiffs never allege that a pregnant member wants but has been denied an abortion to handpick the race or gender of her child. But worse than *Sierra Club*, however, Plaintiffs argue that "no evidence" exists to suggest that "any woman of any race" has ever sought such an abortion—and then vigorously object to any suggestion that their members would want such abortions. (Compl. ¶¶ 39, 48, 49). This alone defeats standing. While Plaintiffs can bemoan the Selective Abortion Laws as bad lawmaking aimed at non-existent problems, they cannot assert and press that grievance in federal court. *Diamond v. Charles*, 476 U.S. 54, 62 (1986) ("The presence of a disagreement, however sharp or acrimonious it may be, insufficient by itself to meet Art. III's requirements.").

**B.   Plaintiffs Fail To State A Viable Equal Protection Claim And Their Complaint Should Be Dismissed Under Rule 12(b)(6).**

To establish an equal protection violation, Plaintiffs have the burden to demonstrate a discrimination against them of some substance and must point to disparate treatment between two similarly situated groups. *Clements v. Fashing*, 457 U.S. 957, 967 (1982); *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1187 (9th Cir. 1995) (equal protection claim requires plaintiffs to identify a 'similarly situated' class for comparative purposes).

Plaintiffs allege no such facts in their Complaint. Plaintiffs never identify the equal treatment allegedly denied to their members, which is the "gravamen" of an equal

protection claim. *Mlikotin v. City of Los Angeles*, 643 F.2d 652 (9th Cir. 1981) (affirming dismissal of equal protection claim under Rule 12(b)(6) because complaint "does not allege the unequal treatment of persons similarly situated which would be the gravamen of a complaint for denial of equal protection"). Nor do Plaintiffs identify a similarly situated class receiving favorable treatment—against which to compare the treatment of their members. *Id*.

These omissions are unsurprising. Notwithstanding Plaintiffs' apparent disdain for the Selective Abortion Laws, their actual content requires identical treatment of all women. That is, abortion providers are prohibited from performing sex and race-based abortions on all women—regardless of race or ethnicity. A.R.S. § 13-3603.02.

Plaintiffs' Complaint should be dismissed for failure to state a claim under Rule 12(b)(6).

## **CONCLUSION**

For the foregoing reasons, the Defendants request that Plaintiffs' Complaint be dismissed in its entirety and with prejudice. Accepting the Complaint's allegations, the Court still lacks subject matter jurisdiction under Rule 12(b)(1), FED. R. CIV. P., and Plaintiffs still fail to state an equal protection claim under Rule 12(b)(6), FED. R. CIV. P.

DATED this 22nd day of July, 2013.

                              THOMAS C. HORNE
                              ATTORNEY GENERAL

                               s/ David D. Weinzweig
                              Robert L. Ellman
                              Solicitor General
                              David D. Weinzweig
                              Assistant Attorney General
                              Attorneys for Defendants

**CERTIFICATE OF SERVICE**

I certify that I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following, if CM/ECF registrants, and mailed a copy of same to any non-registrants, this 22nd day of July 2013 to:

Daniel J. Pochoda, Esq.
Kelly J. Flood, Esq.
ACLU Foundation of Arizona
3707 N. 7th St., Ste. 235
Phoenix, AZ  85014

Alexa Kolbi-Molinas, Esq.
S. Talcott Camp, Esq.
American Civil Liberties Union Foundation
125 Broad St., 18th Floor
New York, NY  10004

*Attorneys for Plaintiffs*

William G. Montgomery, County Attorney
Douglas L. Irish
J. Kenneth Mangum
Louis F. Comus III
Maricopa County Attorney's Office
222 North Central Avenue, Suite 1100
Phoenix, AZ  85004

Michael C. Mattox
Alliance Defending Freedom
801 G Street NW, Suite 509
Washington, DC  20001

Jeremy D. Tedesco
Alliance Defending Freedom
15100 N. 90th St.
Scottsdale, AZ  85260

*Attorneys for proposed Defendant-Intervenors*

  s/ Elizabeth Morales

#3481034